## BURKENROD v BREESE

Ohio Appeals, 7th Dist, Mahoning Co
Decided Mar 13, 1931

Kennedy, Manchester, Ford, Bennett & Powers, Youngstown, for Burkenrod.
Knight & Gluck, Youngstown, for Breese.

FARR, J.

The record discloses that upon the above date Burkenrod and Breese started to drive to Cleveland in Burkenrod's automobile, to make a social call upon lady friends, and at a point between Chagrin Falls and Cleveland a culvert was under course of construction across the highway over which they were traveling. In connection with the work a pile of dirt had been thrown up, obstructing a part of the roadway. There is some difference in the testimony as to warning lights. However, it is conceded that the automobile ran up on the pile of dirt, overturned on its right side, the defendant Burkenrod falling on top of Breese, injuring him. Burkenrod got out of the upturned car immediately and assisted Breese from the same. A passing car picked Breese up and took him to Cleveland, while Burkenrod had his car taken to a garage in Cleveland for temporary repairs, after which the car was driven home, Breese joining in the trip. Breese did not go to a hospital, but upon his arrival at home. at about five o'clock the next morning, Dr. Rosenfeld was called and made an examination and treated Breese for his injuries. Breese remained in bed for some ten or twelve days, during which the doctor saw him about four times, and later Breese called at the doctor's office, the last visit being made about the 20th or 21st of June. It is not disclosed that he had any medical attention thereafter, and it is to recover for these injuries that suit was brought in the court below.

**First,** it is urged that the damages allowed are excessive and based on evidence not properly in the case. In addition to the

foregoing facts, the record discloses that Breese was examined by Dr. Cross, who makes a statement with reference to the injuries, that he found a few little scars over the body that had been cut at that time, but were all healed, that the main injury was to the nervous system, and then somewhat in detail the doctor discusses other phases of nervous disturbance, but it is to be noted that regardless of this he did not consult Dr. Rosenfeld, or any other physician, after June 21st, nor did he ever consult Dr. Cross for treatment. Dr. Phipps did not find any of the conditions spoken of by Dr. Cross.

Breese was what is known as an eccentric dancer, a singer and banjo player, and at times he conducted his own orchestra. He was about twenty-six years of age at the time of the accident. The record further shows that on June 30th, or July 1st, Breese went to Conneaut Lake Park to play and conduct an orchestra which played in a restaurant at noon and at night in a night club. Later he returned to Youngstown, where he played for private entertainments, and thence to Detroit, where he played a banjo in an orchestra. It was said that Breese was not employed at his profession at the time of the hearing in the court below.

Dr. Rosenfeld says that he found the following conditions: lacerations and contusions on the back of the right hand and right arm and elbow, bruises on the right hip, with a hometoms the size of a dollar. Breese also claimed a nervous shock, headaches and dizziness, though the doctor found no indication of such shock. Breese complained mostly of headaches and pain in his leg, and, as above stated, remained in bed for some ten or twelve days. It is not claimed that there are any dislocated joints, sprained or torn ligaments, or any permanent injury whatever, of which objective symptoms could be discovered, so it is said. Dr. Cross, as above stated, says he found a few slight scars when he examined the plaintiff. This, in addition to the testimony of the mother, is practically all of the testimony as to the injuries in addition to what is disclosed with reference to his services soon after the accident, that he rode home the same night in the car, was offered a physician, so it is said, but refused it and declined to go to a hospital. In view of the foregoing, the conclusion is that based upon the present record in the case, the verdict is somewhat excessive.

With reference to the offer and rejection of testimony concerning loss of earnings, it should be noted that there was an objection to the same at record p. 30, but on which the trial court did not act immediately but the trial court later directed the jury, record p. 49, in substance, not to consider the same. This, of course, would be prejudicial error if there was no allegation in the petition as to loss of earnings, and objection was made to testimony concerning the same. However, this was in effect withdrawn from the jury and would not now be sufficient to authorize a reversal of the judgment.

Lastly, it is said that the trial court erred in its charge to the jury on the question of the measure of damages, as follows:

"If the plaintiff is entitled to recover, he is entitled to recover full and whole compensation as shown by the greater weight of the evidence that he has sustained and endured, for the pain, suffering and inconvenience that he has sustained and endured from the time of the accident up to the present time, and for such pain and suffering and inconvenience that he will with reasonable certainty endure in the future."

Objection is made to the foregoing instruction because it includes the word "inconvenience," and this seems to have been an inadvertent statement by the trial court. The use of this word under such circumstances was disapproved in Jensen v Ry Co., 86 Wis, 589; 87 N.W., 359; 32 L.R.A., 880, as follows:

"Compensatory damages cannot include an allowance for inconvenience.

The court instructed the jury that they might allow a reasonable compensation to the plaintiff for the inconvenience as well as for the injury he suffered. The court might as well, have told the jury to make the plaintiff's verdict large enough to compensate him for any disquiet, uneasiness, annoyance or trouble he suffered, for these are inconveniences, according to Webster; and they are not the subjects of compensation, altho they might be of exemplary damages."

To the same effect it was held in Root v City Rd, 83 N.W., 904, in Georgia Rd v Baker, 89 N.W. 88, in Robes v London, L.R. 10 Q.B. 111-122, 5 English Ruling Cases, 361. In the light of the foregoing it is clear that "inconvenience" is not an element of damage in such cases, and this court practically so held in Westfall v Hotman.

In view of the foregoing the conclusion must be, therefore, that the instruction with reference to "inconvenience" was erroneous.

Some claim was made with reference to Breese's hair turning grey after the acci-

dent. Dr. Phipps expressed the opinion that there could be no connection between the accident and the grey hair. Dr. Cross said that he would not attribute plaintiff's grey hair to the accident. Dr. Rosenfeld said that such result might occur. However, in view of the foregoing, it follows that the judgment must be reversed, and it is so ordered.

ROBERTS and POLLOCK ,JJ, concur.